CT Corporation

**Service of Process Transmittal**
03/16/2015
CT Log Number 526766402

TO: Dean Pasalis
Feinberg Hanson LLP
57 River St Ste 204
Wellesley, MA 02481-2053

RE: **Process Served in Delaware**

FOR: Be-Thin, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Radha Geismann, MD., P.C., individually and on behalf of all others similarly-situated, Pltf. vs. Be-Thin, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | CD-ROM, Attachment(s), Summons, Attachment(s), Notice, Petition, Exhibit(s) |
| **COURT/AGENCY:** | St. Louis City County Circuit Court, MO<br>Case # 15SLCC00781 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - 09/20/2012 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/16/2015 at 14:15 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Max G. Margulis<br>Margulis Law Group<br>28 Old Belle Monte Rd.<br>Chesterfield, MO 63017<br>636-536-7022 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day |
| **SIGNED:** | The Corporation Trust Company |
| **ADDRESS:** | 1209 Orange Street<br>Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of  1 / RM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division: | Case Number: 15SL-CC00781 |
|---|---|
| MICHAEL T JAMISON | |
| Plaintiff/Petitioner: | Plaintiff's/Petitioner's Attorney/Address: |
| RADHA GEISMANN MD PC | MAX GEORGE MARGULIS |
| | 28 OLD BELLE MONTE ROAD |
| | CHESTERFIELD, MO 63017 |
| vs. | |
| Defendant/Respondent: | Court Address: |
| BE-THIN, INC. | ST LOUIS COUNTY COURT BUILDING |
| | 7900 CARONDELET AVE |
| Nature of Suit: | CLAYTON, MO 63105 |
| CC Injunction | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: BE-THIN, INC.
Alias:

THE CORPORATION TRUST COMPANY
CORPORATION TRUST CENTER
1209 ORANGE ST
WILMINGTON, DE 19801

COURT SEAL OF

ST. LOUIS COUNTY

> You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
> SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

05-MAR-2015
Date
Further Information:
TLC

_____
Clerk

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____
   _____ (address)
Served at _____
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
                    ☐ the judge of the court of which affiant is an officer.
                    ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
(Seal)              ☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) |
| Total | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

### Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

(1) **Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

(2) **Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-04) SM60 *For Court Use Only: Document ID# 15-SMOS-201*      3      (1SSL-CC0078L)      Rules 54.06, 54.07, 54 14, 54.20;
506.500, 506.510 RSMo

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-04) SM60 *For Court Use Only: Document ID# 15-SMOS-201*     4     (15SL-CC00781)     Rules 54.06, 54.07, 54.14, 54.20;
506.300, 506.510 RSMo

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

**15SL-CC00781**

STATE OF MISSOURI    )
                            )
ST. LOUIS COUNTY    )

## IN THE CIRCUIT COURT OF THE ST. LOUIS COUNTY
## STATE OF MISSOURI

| | |
|---|---|
| RADHA GEISMANN, MD., P.C., individually and on behalf of all others similarly-situated, | Cause No. _____ |
|       Plaintiff, | Division |
| v. | |
| BE-THIN, INC.,<br>    Serve:  The Corporation Trust Company<br>               Corporation Trust Center<br>               1209 Orange St.<br>               Wilmington, DE 19801<br>               Dutchess County | PROCESS SERVER |
| KEVIN EBERLY,<br>    Serve:  11 Spring St.<br>               Pawling, NY, 12564-1131<br>               Westchester County | PROCESS SERVER |
| and | |
| JOHN DOES 1-10, | HOLD SERVICE |
|       Defendants. | |

## CLASS ACTION PETITION

      Plaintiff, RADHA GEISMANN, MD., P.C. ("Plaintiff"), brings this action on behalf of

itself and all others similarly situated, through its attorneys, and except as to those allegations

pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge,

alleges the following upon information and belief against Defendants, BE-THIN, INC., KEVIN

EBERLY, and JOHN DOES 1-10 ("Defendants"):

I

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

## PRELIMINARY STATEMENT

1.      This case challenges Defendants' practice of sending unsolicited facsimile advertisements.

2.      The federal Telephone Consumer Protection Act, 47 USC § 227, prohibits a person or entity from sending or having an agent send fax advertisements without the recipient's prior express invitation or permission ("advertising faxes" or "unsolicited faxes") and without a proper opt out notice. The TCPA provides a private right of action and provides statutory damages of $500 per violation.

3.      Unsolicited faxes damage their recipients. An advertising fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. An advertising fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. An advertising fax consumes a portion of the limited capacity of the telecommunications infrastructure serving the victims of advertising faxing.

4.      On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA, the common law of conversion and Missouri consumer and fraud and deceptive business practices act Chapter 407.

5.      Plaintiff seeks an award of statutory damages for each violation of the TCPA.

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

## JURISDICTION AND PARTIES

6.    This court has personal jurisdiction over Defendants because Defendants transacts business within this state, have made contracts within this state, and/or have committed tortious acts within this state and otherwise have sufficient minimum contacts with the State of Missouri.

7.    Plaintiff RADHA GEISMANN, MD., P.C., is a Missouri professional corporation with its principal place of business in Missouri.

8.    On information and belief, Defendant, BE-THIN, INC. is a Delaware corporation with its principal place of business at 200 White Plains Rd, Tarrytown, New York.

9.    On information and belief, Defendant, BE-THIN, INC. does business as Center for Medical Weight Loss.

10.    On information and belief, Defendant KEVIN EBERLY is the CEO of BE-THIN, INC.

11.    Defendant KEVIN EBERLY, upon information and belief, exercised direction and/or control over BE-THIN, INC., both generally and specifically with regard to the making of and sending faxes.

12.    Defendant, John Does 1-10 will be identified through discovery, but are not presently known.

### RELEVANT FACTS

13.    On or about the dates of September 20, 2012, October 11, 2012, November 8, 2012, November 30, 2012, November 14, 2013 and December 12, 2013. Defendants sent 6 unsolicited facsimiles to Plaintiff in St. Louis County, Missouri.  A true and correct copy of the facsimiles are attached as Exhibits A – F (excluding any handwritten notations).

Electronically Filed - St. Louis County - March 02, 2015 - 04:29 PM

14.   The transmissions sent to Plaintiff on or about September 20, 2012, October 11, 2012, November 8, 2012, November 30, 2012, November 14, 2013 and December 12, 2013 constitutes material advertising the commercial availability of any property, goods or services.

15.   On information and belief, Defendant has sent other facsimile transmissions of material advertising the commercial availability of property, goods, or services to many other persons as part of a plan to broadcast fax advertisements, of which Exhibits A – F are examples.

16.   Defendants approved, authorized and participated in the scheme to broadcast fax advertisements by  (a) directing a list to be purchased or assembled; (b) directing and supervising employees or third parties to send the faxes; (c) creating and approving the form of fax to be sent; and (d) determining the number and frequency of the facsimile transmissions.

17.   Defendants created or made Exhibits A – F and other fax advertisements, which Defendants distributed to Plaintiff and the other members of the class.

18.   Exhibits A – F and the other facsimile advertisements are a part of Defendants' work or operations to market Defendants' goods or services which were performed by Defendants and on behalf of Defendants.

19.   Exhibits A – F and the other facsimile advertisements constitute material furnished in connection with Defendants' work or operations.

20.   The transmission of facsimile advertisements, including Exhibits A – F, to Plaintiff did not contain a notice that states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph 47 C.F.R. 64.1200(a)(3)(v) of this section is unlawful.

4

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

21.   The transmission of facsimile advertisements, including Exhibits A – F, to Plaintiff did not contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

22.   The transmission of facsimile advertisements, including Exhibits A – F, to Plaintiff was required to contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

23.   On information and belief, Defendants sent multiple facsimile advertisements to Plaintiff and members of the proposed classes throughout the time period covered by the class definitions.

24.   On information and belief, Defendants faxed the same and other facsimile advertisements to the members of the proposed classes in Missouri and throughout the United States without first obtaining the recipients' prior express permission or invitation.

25.   There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unlawful faxes.   Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

26.   Defendants knew or should have known that:   (a) facsimile advertisements, including Exhibits A – F were advertisements; (b) Plaintiff and the other members of the class had not given their prior permission or invitation to receive facsimile advertisements; (c) No established business relationship existed with Plaintiff and the other members of the class; and (d) Defendants did not display a proper opt out notice.

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

27.     Defendants engaged in the transmissions of facsimile advertisements, including Exhibits A – F believing such transmissions were legal based on Defendants' own understanding of the law and/or based on the representations of others on which Defendants reasonably relied.

28.     Defendants did not intend to send transmissions of facsimile advertisements, including Exhibits A – F to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmissions of facsimile advertisement was sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendants' own understanding of the law and/or based on the representations of others on which Defendants reasonably relied.

29.     Defendants failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission of facsimile advertisements, including Exhibits A – F both to others in general, and specifically to Plaintiff.

30.     The transmissions of facsimile advertisements, including Exhibits A – F to Plaintiff and other members of the class caused destruction of Plaintiff's property.

31.     The transmissions of facsimile advertisements, including Exhibits A – F to Plaintiff and other members of the class interfered with Plaintiff's and other members of the class' exclusive use of their property.

32.     The transmissions of facsimile advertisements, including Exhibits A – F to Plaintiff and other members of the class interfered with Plaintiff's and other members of the class' business and/or personal communications.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

33.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

6

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

34.     Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47

U.S.C. § 227, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2)
> were sent by or on behalf of Defendants any telephone facsimile
> transmissions of material making known the commercial existence of, or
> making qualitative statements regarding any property, goods, or services (3)
> with respect to whom Defendants cannot provide evidence of prior express
> permission or invitation for the sending of such faxes, (4) with whom
> Defendants does not have an established business relationship or (5) which
> did not display a proper opt out notice.

35.     A class action is warranted because:

a.      On information and belief, the class includes more than forty persons and is

so numerous that joinder of all members is impracticable.

b.      There are questions of fact or law common to the class predominating over

questions affecting only individual class members, including without limitation:

i.      Whether Defendants engaged in a pattern of sending unsolicited fax

advertisements;

ii.     Whether Exhibits A – F and other faxes transmitted by or on behalf

of Defendant contain material advertising the commercial availability of any

property, goods or services;

iii.    Whether Defendants' facsimiles advertised the commercial

availability of property, goods, or services;

iv.     The manner and method Defendants used to compile or obtain the

list of fax numbers to which they sent Exhibits A – F and other unsolicited

faxed advertisements;

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

v.      Whether Defendants faxed advertisements without first obtaining the recipients' prior express permission or invitation;

vi.     Whether Defendants violated the provisions of 47 USC § 227;

vii.    Whether Plaintiff and the other class members are entitled to statutory damages;

viii.   Whether Defendants knowingly violated the provisions of 47 USC § 227;

ix.     Whether Defendants should be enjoined from faxing advertisements in the future;

x.      Whether the Court should award trebled damages; and

xi.     Whether Exhibits A – F and the other fax advertisements sent by or on behalf of Defendants displayed the proper opt out notice required by 64 C.F.R. 1200.

c.      Plaintiff's claims are typical of the other class members.

d.      Plaintiff will fairly and adequately protect the interests of the other class members.  Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

e.      A class action is the superior method for adjudicating this controversy fairly and efficiently.  The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

36.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes. Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

37.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

38.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227(b)(1).

39.    The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

40.    The TCPA provides:

Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

(A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C)    Both such actions.

41.    The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

9

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

42.   The TCPA is a strict liability statute and the Defendants are liable to Plaintiff and the other class members even if their actions were only negligent.

43.   Defendants' actions caused damages to Plaintiff and the other class members. Receiving Defendants' advertising faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendants' faxes cost Plaintiff time, as Plaintiff and/or its employees wasted their time receiving, reviewing and routing Defendants' unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities.   Finally, Defendants' faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

44.   Defendants did not intend to cause damage to Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to interfere with recipients' fax machines or consume the recipients' valuable time with Defendants' advertisements.

45.   If the court finds that Defendants knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (B) of this paragraph. 47 U.S.C. § 227(b)(3).

46.   Defendants knew or should have known that: (A) Plaintiff and the other class members had not given express permission or invitation for Defendants or anyone else to fax advertisements about Defendants' goods or services, (B) Defendants did not have an established business relationship with Plaintiff and the other members of the class, (C) Exhibits A – F and the

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

other facsimile advertisements were advertisements, and (D) Exhibits A – F and the other facsimile advertisements did not display the proper opt out notice.

47.     Defendants violated 47 U.S.C. § 227 et seq. by transmitting Exhibits A – F and the other facsimile advertisements hereto to Plaintiff and the other members of the class without obtaining their prior express permission or invitation and not displaying the proper opt out notice required by 64 C.F.R. 1200.

48.     Defendants knew or should have known that:  (a) documents Exhibits A – F and the other facsimile advertisements were advertisements;  (b) Defendants did not obtain prior permission or invitation to send facsimile advertisements, including Exhibits A – F; (c) Defendants did not have an established business relationship with Plaintiff or the other members of the class and (d) Exhibits A – F and the other facsimile advertisements did not display a proper opt out notice.

49.     Defendants engaged in the transmissions of documents Exhibits A – F and the other facsimile advertisements believing such transmissions were legal based on Defendants' own understanding of the law and/or based on the representations of others on which Defendants reasonably relied.

50.     Defendants did not intend to send transmissions of documents Exhibits A – F and the other facsimile advertisements to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmissions of documents Exhibits A – F and the other facsimile advertisements were sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendants'

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

own understanding of the law and/or based on the representations of others on which Defendants reasonably relied.

51.   Defendants failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission of documents Exhibits A – F and the other facsimile advertisements both to others in general, and specifically to Plaintiff.

52.   Defendants' actions caused damages to Plaintiff and the other class members, because their receipt of Defendants' unsolicited fax advertisements caused them to lose paper and toner consumed as a result. Defendants' actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendants were using Plaintiff's fax machine for Defendants' unauthorized purpose. Defendants' actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing and reviewing Defendants' unauthorized faxes and that time otherwise would have been spent on Plaintiff's business activities. Finally, the injury and property damage sustained by Plaintiff and the other members of the class occurred outside of Defendants' premises. Pursuant to law, Plaintiff, and each class member, instead may recover $500 for each violation of the TCPA.

WHEREFORE, Plaintiff, RADHA GEISMANN, MD., P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendants, BE-THIN, INC., KEVIN EBERLY, and JOHN DOES 1-10, as follows:

A.   That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

B.     That the Court award between $500.00 and $1,500.00 in damages for each violation of the TCPA;

C.     That the Court enter an injunction prohibiting the Defendants from engaging in the statutory violations at issue in this action; and

D.     That the Court award costs and such further relief as the Court may deem just and proper.

E.     That the Court award pre-judgment and post-judgment interest at the statutory rate of 9%.

**COUNT II**
**CONVERSION**

53.     Plaintiff incorporates Paragraphs 3 and 4, 13, 16 – 19, 23 – 25 and 27 – 32 as for its paragraph 53.

54.     In accordance with Mo. S. Ct. Rule 52.08, Plaintiff brings Count II for conversion under the common law for the following class of persons:

> All persons who on or after five years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendants with respect to whom Defendants cannot provide evidence of prior express permission or invitation.

55.     A class action is proper in that:

a.     On information and belief the class is so numerous that joinder of all members is impracticable.

b.     There are questions of fact or law common to the class predominating over all questions affecting only individual class members, including:

13

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

    i.      Whether Defendants engaged in a pattern of sending unsolicited faxes;

    ii.     Whether Defendants sent faxes without obtaining the recipients' prior express permission or invitation of the faxes;

    iii.    The manner and method Defendants used to compile or obtain the list of fax numbers to which it sent Exhibits A – F and other unsolicited faxes;

    iv.    Whether Defendants committed the tort of conversion; and

    v.     Whether Plaintiff and the other class members are entitled to recover actual damages and other appropriate relief.

c.    Plaintiff's claims are typical of the other class members.

d.    Plaintiff will fairly and adequately protect the interests of the other class members.  Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

e.    A class action is the superior method for adjudicating this controversy fairly and efficiently.  The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

56.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who is experienced in handling class actions and claims involving

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

57.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

58.    By sending Plaintiff and the other class members unsolicited faxes, Defendants improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendants also converted Plaintiff's employees' time to Defendants' own use.

59.    Immediately prior to the sending of the unsolicited faxes, Plaintiff, and the other class members owned an unqualified and immediate right to possession of their fax machine, paper, toner, and employee time.

60.    By sending the unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to Defendants' own use. Such misappropriation was wrongful and without authorization.

61.    Defendants knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

62.    Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of the sending of unsolicited fax advertisements from Defendants.

63.    Each of Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

Defendants' unlawful faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

64.     Defendants' actions caused damages to Plaintiff and the other members of the class because their receipt of Defendants' unsolicited faxes caused them to lose paper and toner as a result. Defendants' actions prevented Plaintiff's fax machines from being used for Plaintiff's business purposes during the time Defendants was using Plaintiff's fax machines for Defendants' unlawful purpose. Defendants' actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendants' unlawful faxes, and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, RADHA GEISMANN, MD., P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendants, BE-THIN, INC., KEVIN EBERLY, and JOHN DOES 1-10, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award costs of suit; and

D.     Awarding such further relief as the Court may deem just and proper.

## COUNT III
## MISSOURI CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### Chapter 407

65.     Plaintiff incorporates Paragraphs 3 and 4, 13, 16 – 19, 23 – 25 and 27 – 32 as for its paragraph 65.

16

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

66.  In accordance with Chapter 407, Plaintiff, on behalf of the following class of persons, bring Count III for Defendants' unfair practice of sending unsolicited and unlawful fax advertisements:

> All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendants with respect to whom Defendants cannot provide evidence of prior express permission or invitation.

67.  A class action is proper in that:

a.  On information and belief the class consists of over 40 persons in Missouri and throughout the United States and is so numerous that joinder of all members is impracticable.

b.  There are questions of fact or law common to the class predominating over all questions affecting only individual class members including:

i.  Whether Defendants engaged in a pattern of sending unsolicited faxes;

ii.  The manner and method Defendants used to compile or obtain the list of fax numbers to which it sent Exhibits A – F and other unsolicited faxes;

iii.  Whether Defendants' practice of sending unsolicited faxes violates Missouri public policy;

iv.  Whether Defendants' practice of sending unsolicited faxes is an unfair practice under the Missouri Merchandising Practices Act (MMPA), Chapter 407 RSMO; and

17

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

v.      Whether Defendants should be enjoined from sending unsolicited

fax advertising in the future.

vi.

c.      Plaintiff's claims are typical of the other class members.

d.      Plaintiff will fairly and adequately protect the interests of the other class

members.  Plaintiff's counsel are experienced in handling class actions and claims

involving unsolicited advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has

any interests adverse or in conflict with the absent class members.

e.      A class action is the superior method for adjudicating this controversy fairly

and efficiently.  The interest of each individual class member in controlling the

prosecution of separate claims is small and individual actions are not economically

feasible.

68.     Plaintiff will fairly and adequately protect the interests of the other class members.

Plaintiff has retained counsel who are experienced in handling class actions and claims involving

lawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in

conflict with the class.

69.     A class action is an appropriate method for adjudicating this controversy fairly and

efficiently.  The interest of the individual class members in individually controlling the prosecution

of separate claims is small and individual actions are not economically feasible.

70.     Defendants' unsolicited fax practice is an unfair practice, because it violates public

policy, and because it forced Plaintiff and the other class members to incur expense without any

18

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

consideration in return.   Defendants' practice effectively forced Plaintiff and the other class members to pay for Defendants' advertising campaign.

71.   Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

72.   Defendants' misconduct caused damages to Plaintiff and the other members of the class, including the loss of paper, toner, ink, use of their facsimile machines, and use of their employees' time.

73.   Defendants' actions caused damages to Plaintiff and the other class members because their receipt of Defendants' unsolicited faxes caused them to lose paper and toner consumed as a result.  Defendants' actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendants were using Plaintiff's fax machine for Defendants' unlawful purpose.   Defendants' actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendants' unlawful faxes and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, RADHA GEISMANN, MD., P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendants, BE-THIN, INC., KEVIN EBERLY, and JOHN DOES 1-10, as follows:

A.   That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

B.   That the Court award damages to Plaintiff and the other class members;

19

Electronically Filed - St.Louis County - March 02, 2015 - 04:29 PM

C.   That the Court award treble damages to Plaintiff and the other class members for knowing violations of the TCPA;

D.   That the Court declare that Defendants' conduct violated the TCPA and that this action is just and proper;

E.   That the Court award damages for conversion of the plaintiffs and the class for violation of their rights;

F.   That the Court award damages and attorney fees for violation of Chapter 407;

G.   That the Court award attorney fees and costs;

H.   That the Court award all expenses incurred in preparing and prosecuting these claims;

I.   That the Court enter an injunction prohibiting Defendants from sending faxed advertisements; and

J.   Awarding such further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Max G. Margulis
Max G. Margulis, #24325
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022 – Residential
F: (636) 536-6652 – Residential
E-Mail: MaxMargulis@MargulisLaw.com
*Attorneys for Plaintiff*

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Phone: (847) 368-1500
Fax: (847) 368-1501
E-Mail: bwanca@andersonwanca.com

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

2012-09-20 10:59   FROM: The Center for Medical Weight Loss TO:  3148729174

*Gusmann*

*347 k*

# MAKE MORE MONEY WITH GREATER PATIENT CARE!
# WE ARE EXPANDING INTO YOUR AREA!!

"Obesity program adopted by doctors."
*The New York Times*

"An Rx for Growth from Weight Loss."
WALL STREET JOURNAL

"Growing Trend Amongst Doctors"

"Achieve significant weight loss."
The American Journal of Medicine

## Market Opportunity:

- Americans spend more than $60B annually on weight loss and diet programs.

- 53 diseases are linked to obesity

- Over 80% of Type II Diabetes is directly related to obesity.

- Over 70% of cardiovascular disease is directly related to obesity.

- The FDA states "No commercial non-medical program has had successful long term results."

- Effective January 2012, Medicare and many private insurance companies, now provide reimbursement for obesity screenings and counseling by Primary Care Physicians.

- According to the CDC, there are 33 states with an obesity rate greater than 25%.

- Obesity is the second leading preventable cause of death in the US.

- There are over 78M obese Americans; over 40M are severely obese; over 6M are morbidly obese.

---

☐ **Yes, I would like to learn more and schedule a free online webinar.**

Name: _____  Title: _____

Best day(s) for an online meeting: ☐ Mon ☐ Tues ☐ Wed ☐ Thur ☐ Fri

Best time(s) for an online meeting: ☐ Morning ☐ Afternoon ☐ Evening

Address: _____

Phone: _____  Fax: _____

Fax to: 914.332.4192 to get more information or call 888.824.0216 to schedule a free webinar.

---

**888.824.0216**
**cmwldoctor.com**



the center for medical weight loss®
Evidence-based weight loss.

To be removed from our list, please call toll free 1-877-281-8842 or go to www.danobserved.net/FAXNUM.asp & enter pin# 8804.

# EXHIBIT A

Electronically Filed - St. Louis County - March 02, 2015 - 04:29 PM

2012-10-11 13:24   FROM: The Center for Medical Weight Loss TO:   3148729174

*Giesmann*

*346 X*

# INCREASE YOUR PRACTICE REVENUE BY
# $20,000 PER MONTH
## WITH OR WITHOUT INSURANCE



## Learn how to treat obesity with our scientifically proven, evidence-based programs.*

The Center for Medical Weight Loss program is the first of its kind, offering the non-surgical, personalized, comprehensive physician-supervised weight loss approach that leads to proven long-term healthy weight maintenance.

**WE ARE THE STANDARD OF CARE.** Using evidence based practices CMWL has trained more than 700 board certified physicians in bariatric medicine.

**WITH MORE THAN 400 LOCATIONS IN 45 STATES,** CMWL provides complete training and ongoing support to help physicians successfully integrate non-surgical, weight loss medicine into existing practices.

## To learn how to easily integrate non-surgical weight loss into your existing practice, call today! 888.819.5609



### the center for medical weight loss®
Evidence-based weight loss.

888.819.5609     cmwldoctor.com

*The study demonstrated that any patient on the CMWL meal-replacement program without an appetite suppressant for at least 4 weeks lost an average of 11.1% of their excess body weight at 12 weeks.
To be removed from our list, please call toll free 1-877-281-4942 or go to www.donotsend.me/FAXNUM.asp & enter your 8904.*


# EXHIBIT B

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

2012-11-08 15:45   FROM: The Center for Medical Weight Loss TO:  3148729174

*Geismann*

345 X

# MAKE MORE MONEY WITH GREATER PATIENT CARE!
# WE ARE EXPANDING INTO YOUR AREA!!



"Obesity program adopted by doctors"
*The New York Times*

"An Rx for Growth from Weight Loss."
WALL STREET JOURNAL

"Growing Trend Amongst doctors"

"Achieve significant weight loss"
THE AMERICAN JOURNAL of MEDICINE

## Market Opportunity:

- Americans spend more than $60B annually on weight loss and diet programs.

- 53 diseases are linked to obesity

- Over 80% of Type II Diabetes is directly related to obesity.

- Over 70% of cardiovascular disease is directly related to obesity.

- The FDA states "No commercial non-medical program has had successful long term results."

- Effective January 2012, Medicare and many private insurance companies, now provide reimbursement for obesity screenings and counseling by Primary Care Physicians.

- June 2012 USPSTF recommends obesity screening for all adults and management of obesity for patients with a BMI of 30 or higher for PCP's.

- There are over 78M obese Americans; over 40M are severely obese; over 6M are morbidly obese.

---

☐ **Yes, I would like to schedule a free online webinar to learn more about training and integration of medical weight loss into my practice.**

Name: _____     Title: _____

Address: _____

Phone: _____     Fax: _____



Fax to: 914.332.4192 to get more information or call 888.824.0216 to schedule a free webinar

---

888.824.0216
cmwldoctor.com


the center for medical weight loss®
Evidence-based weight loss.

To be removed from our list, please call toll free 1-877-281-3342 or go to www.dontsend.net/FAXNLM.asp & enter pin# 3804.

# EXHIBIT C

Electronically Filed - St. Louis County - March 02, 2015 - 04:29 PM

2012-11-30 09:59   FROM: The Center for Medical Weight Loss TO:  3149729174

*Greismann MD P.C*          344    x

# INCREASE REVENUE WITH GREATER PATIENT CARE
## THE CENTER FOR MEDICAL WEIGHT LOSS IS EXPANDING INTO YOUR AREA



"Obesity program adopted by doctors." *The New York Times*

"An Rx for Growth from Weight Loss." *WALL STREET JOURNAL*

"Growing Trend Amongst doctors"

"Achieve significant weight loss" *The AMERICAN JOURNAL of MEDICINE*

## Market Opportunity:

- Americans spend more than $60B annually on weight loss and diet programs.

- 53 diseases are linked to obesity

- Over 80% of Type II Diabetes is directly related to obesity.

- Over 70% of cardiovascular disease is directly related to obesity.

- The FDA states "No commercial non-medical program has had successful long term results."

- Effective January 2012, Medicare and many private insurance companies, now provide reimbursement for obesity screenings and counseling by Primary Care Physicians.

- June 2012 USPSTF recommends obesity screening for all adults and management of obesity for patients with a BMI of 30 or higher for PCPs.

- There are over 78M obese Americans; over 40M are severely obese; over 6M are morbidly obese.

---

☐ YES, I would like to schedule a free online webinar to learn more about training and integration of medical weight loss into my practice.

Name: _____   Title: _____

Best day(s) for an online meeting: ☐ Mon ☐ Tues ☐ Wed ☐ Thur ☐ Fri

Best time(s) for an online meeting: ☐ Morning ☐ Afternoon ☐ Evening

Address: _____

Phone: _____   Fax: _____

Fax to: 914.332.4192 to get more information or call 866.824.0216 to schedule a free webinar

---

888.824.0216
cmwldoctor.com


the center for medical weight loss®
Evidence-based weight loss.

To be removed from our list, please call then 1-877-281-8242 or go to www.remitsend.net/sDFA.XRUN4.asp & enter pin# 9904.

EXHIBIT  D

Electronically Filed - St. Louis County - March 02, 2015 - 04:29 PM

2013-11-14 10:08   FROM: The Center for Medical Weight Loss TO:   3146729174

*Guismann*

*333*



# ARE YOU READY FOR THE AFFORDABLE CARE ACT?

## THE ✳CMWL PROGRAM CAN INCREASE REVENUE $20K PER MONTH

### Typical Insurance Patient

| Insurance | $40 |
| Cash | $0 |
| Co-pay | $20 |

**$60** NET REVENUE PER VISIT

**$204** NET REVENUE PER YEAR

### Typical CMWL Obese Patient: Preventive Services Under the Affordable Care Act

#### NO DEDUCTIBLE NO CO-PAY

| Insurance | $105 |
| Cash | $67 |
| Co-pay | $0 |

**$172** NET REVENUE PER VISIT

**$4,472** NET REVENUE PER YEAR

With preventive services being a cornerstone of the Affordable Care Act, a 15 minute obesity preventive visit will generate, on average, $172 in net revenue with no deductible or co-payment. Find out how a small investment can increase practice revenue by $20K per month.

☐ **Yes, I would like to learn more and schedule a free online webinar.**

Name: _____ Title: _____ MD☐ DO☐ NP☐ PA☐

Best day(s) for an online meeting: ☐ Mon ☐ Tues ☐ Wed ☐ Thur ☐ Fri ☐ Sat

Best time(s) for an online meeting: ☐ Morning ☐ Afternoon ☐ Evening

Address: _____

Phone: _____ Email: _____

Group Practice? ☐ No ☐ Yes   Practice Name: _____

### Fax to: 914.332.4192

**888.824.0216**
**cmwldoctor.com**



*the center for medical weight loss*

To be removed from our list, please call toll free 1-877-231-8848 or go to www.donotsend.net/FAX & enter pin# 5604.
*Assuming 3.4 visits per year **Assuming 26 preventive visits per year. No deductible or co-pay.



# EXHIBIT *E*

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

2013-12-12 15:16  FROM: The Center for Medical Weight Loss TO:  3148729174

*Geismann*

334 x

# Free 2 Day Obesity Training Conference

## What are you doing in 2014 to help your obese patients?

- The CDC and AMA recognize obesity as a chronic disease

- U.S. Preventive Services Task Force recommends obesity screening and treatment

- CMS decision covering obesity care leads to coverage under Medicare and private insurance at favorable rates

- Under the Affordable Care Act, preventive services for obesity care at higher rates with an increased focus on wellness and prevention

### New Year, New Opportunity, New Membership Offer!
Free training - generate additional revenue while helping your patients achieve a healthy weight.

### Be our guest and attend for Free! Seats are limited, register now!
**January 16-17 at Phoenix Marriot**
Time: 7:30 AM - 6:00 PM
Call 602-225-9000 for preferred hotel rate of $189/night

| | |
|---|---|
| Name: _____ | Title: _____  MD☐ DO☐ NP☐ PA☐ |
| Staff Name: _____ | Title: _____ |
| Address: _____ | |
| Phone: _____ | Email: _____ |
| Group Practice? ☐ No ☐ Yes  Practice Name: _____ | |

### Fax to: 914.332.4192

888.824.0216
cmwldoctor.com



**CMWL**
the center for medical weight loss

To be removed from our list, please call toll free 1-877-581-8942 or go to www.donotsend.net/FAX & enter pin# 0004.



EXHIBIT *F*

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

**15SL-CC00781**

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

RADHA GEISMANN, MD., P.C., individually
and on behalf of all others similarly-situated,

      Plaintiff,

v.

BE-THIN, INC., KEVIN EBERLY,
and JOHN DOES 1-10,

      Defendants.

Cause No.

Division

## MOTION FOR CLASS CERTIFICATION [1]

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, by

and through its undersigned counsel, and for its Motion for Class Certification, states

1.    This cause should be certified as a class because all of the necessary elements of

Rule 52.08 are met.

2.    Plaintiff requests that the Court certify a class, so the common claims of the Class

members, based on a uniform legal theory and factual allegations applicable to all Class

members, can be resolved on a class-wide basis.

---

1.    Recent developments in class action practice make necessary the filing of this motion with the petition. Defendants in class litigation have resorted to making individual settlement offers to named plaintiffs before a class action is certified in an attempt to "pick-off" the putative class representative and thereby derail the class action litigation. Most courts have rejected these pick-off attempts and have held that the filing of a motion for class certification with the initial petition or within a number of days after service of any settlement offer to a named plaintiff staves off offers of judgment to the named plaintiff. Any settlement offer made after the filing of the motion for class certification must be made on a class-wide basis. *See Alpern v. UtiliCorp United*, 84 F.3d 1525 (8th Cir. 1996); *Weiss v. Regal Collections*, 385 F. 3d 337, 344 n. 12 (3d Cir. 2004); *see Jancik v. Cavalry Portfolio Servs.*, 2007 WL 1994026, at *2–3 (D. Minn. July 3, 2007) *Harris v. Messerli & Kramer, P.A.*, 2008 WL 508923, at *2–3 (D. Minn. Jan. 2, 2008) (same); *Johnson v. U.S. Bank Nat'l Assn.*, 276 F.R.D. 330, 333-335 (D. Minn. 2011) (same). *See also Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249 (10th Cir. 2011); *Mey v. Monitronics Int'l, Inc.*, 2012 WL 983766, at * 4-5 (N.D. W.Va. Mar. 22, 2012); *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 723 F.Supp.2d 1020, 1029 (N.D. Ohio 2010); *McDowall v. Cogan*, 216 F.R.D. 46, 48-50 (E.D. N.Y. 2003).

2.

1

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

3.    Plaintiff proposes the following Class definition:

All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages of material advertising seminars by or on behalf of Defendants.

4.    Under Rule 52.08(a)(1), to bring a Class action, the Class must be "so numerous that joinder of all members is impracticable." Rule 52.08(a)(1). Here, there are at least hundreds of persons who fall within the Class definition. Thus, the numerosity requirement of Rule 52.08(a)(1) is satisfied.

5.    There are questions of law or fact common to the Class members.

6.    The claims or defenses of the representative parties are typical of the claims or defenses of this Class.

7.    Plaintiff and its counsel will fairly and adequately protect the interest of the Class.

8.    Common issues of law or fact predominate over any individual issues, and a class action is the superior method for the fair and efficient adjudication of this controversy.

9.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class.

10.    The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

11.    Plaintiff requests additional time to file its supporting Memorandum of Law after the Court sets up an appropriate discovery schedule. Written discovery related to class certification issues is presently outstanding.

WHEREFORE, Plaintiff prays that this Court certify this case as a class action, grant

2

Electronically Filed - St Louis County - March 02, 2015 - 04:29 PM

statutory injunctive relief prohibiting Defendants from sending advertising materials via fax to members of the class, and further pray that the Court appoint Plaintiff as Class Representative, appoint Plaintiff's attorneys Class Counsel; that this Court allow Plaintiff additional time, for completion of discovery related to class certification issues, to file its Memorandum of Law in Support of this Motion; and for such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

_____ /s/ Max G. Margulis _____
Max G. Margulis, #24325
MARGULIS LAW GROUP
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022 – Residential
F: (636) 536-6652 – Residential
E-Mail: MaxMargulis@MargulisLaw.com

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
P: (847) 368-1500

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the Defendants BE-THIN, INC., and KEVIN EBERLY, by the appropriate process servers at the same time as the petitions.

_____ /s/ Max G. Margulis _____

3

STATE OF MISSOURI )
)
ST. LOUIS COUNTY )

## IN THE CIRCUIT COURT OF THE ST. LOUIS COUNTY
## STATE OF MISSOURI

RADHA GEISMANN, MD., P.C., individually
and on behalf of all others similarly-situated,

      Plaintiff,

v.

BE-THIN, INC., KEVIN EBERLY,
and JOHN DOES 1-10,

      Defendants.

Case No.: 15SL-CC 00781

Division: 10

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## DIRECTED TO DEFENDANT BE-THIN, INC.

**COMES NOW** Plaintiff and in accordance with Missouri Supreme Court Rule 57.01,
hereby requests that Defendant BE-THIN, INC. answer, fully and separately, under oath, the
following interrogatories within thirty (30) days from the date of service hereof.  These
discovery requests are deemed continuing to the full extent authorized by Rule 56.01(e).

### DEFINITIONS AND INSTRUCTIONS

1.    Unless stated otherwise, these Interrogatories cover the time period running from five
years prior to the date of the original Complaint in this matter through trial in this matter.

2.    The term "Relevant Time Period" means the time period running from four years prior to
the date of the original Complaint in this matter to present.

3.    A request to "fully identify" any person means to state that person's full name, including
middle name and suffixes, current address, and current telephone number.  If either a current
address or current telephone number is not known, a request to "fully identify" any person means

1

to state all known addresses including former addresses, and phone numbers for such person, that person's date of birth, and any other information in your possession that is of a type to assist in contacting that person and/or to differentiate that person from a list of persons with a similar name.

4.  "Defendant" or "you" means BE-THIN, INC., or any of their agents, employees, shareholders, officers, directors, or anyone Defendant has engaged or retained in any way to transmit facsimile transmissions.

5.  "Established Business Relationship" or "EBR" means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity, which relationship has not been previously terminated by either party.

6.  "Communication" means any exchange of information, whether orally or in writing, and includes, but is not limited to, telephonic communication, audiovisual communication, radio transmission, television transmission, data transmission and any and all forms of written information and documents.

7.  "Document" means anything in or upon which information may be fixed and can be perceived, reproduced or otherwise communicated, with or without the aid of any machine or device and regardless of the medium of expression in which the information is fixed (e.g., print, video, audio, computer diskette, magnetic tape), including but not limited to, the following: contracts, agreements, insurance plans, insurance policies, papers, photographs, tape recordings, transcripts, computer diskettes, computer drives, hard drives, mainframes or any other kind of

2

database or data stored in a computer in any manner (including any coding information necessary to gain access to any such computer information), videotapes, documents filed with any state or federal regulatory or administrative agency or entity, annual reports, shareholder agreements, letters, correspondence, memoranda, diaries, journals, corporate forms, faxes, telegrams, photographs, court papers, financial reports, financial statements, annual reports, checks, check books, check stubs, check statements, bank statements, deposit slips, journals, general and subsidiary ledgers, worksheets, accounts, bills, promissory notes, invoices, punch cards, purchase orders, acknowledgments, authorizations, sales slips, receipts, shipping papers, telex and other teletype communications, computer printouts, any other printout sheets, movie film, slides, microfilm, reports (including appraisal reports), studies, summaries, minutes of meetings, minute books, circulars, notes (whether typewritten, handwritten or otherwise), agendas, bulletins, notices, announcements, proofs, sheets, instructions, charts, tables, manuals, brochures, magazines, pamphlets, lists, visitors' logs, schedules, price lists, engineering and/or architectural drawings, sketches, plans, blueprints, specifications, diagrams, drafts, books and records, desk calendars, notebooks, registers, appointment books, budgets, analyses, projections, tax returns and all other data compilations from which information can be obtained or translated, regardless of whether such materials are in Defendant's possession or are in the possession of Defendant's present or former officers, agents, servants, employees, representatives, attorneys or other persons acting on their behalf.  The term "document" also includes any and all drafts and/or copies of any of the foregoing materials that do not conform to the original or final version in any way, in that they contain any mark, alteration or additional writing or other change from the original or final version.

3

8. "Person" refers to individuals, partnerships, associations, corporations, governmental bodies, and any and all subparts (e.g., subsidiaries, agencies, or departments) of any such entity.

9. "Meeting" refers to any gathering of two or more persons where any face-to-face oral communication takes place or any written communication is exchanged by hand.

10. "Contact" means any meeting, communication, signaling, or interaction of persons, by whatever means made or done, regardless of whether an exchange of information took place.

11. "Thing" refers to all material within the broadest permissible meaning of the word.

12. "Concerning" means relating, referring to, describing, evidencing or constituting.

13. "Referring or relating" means to make a statement about, discuss, describe, show, reflect, concern, identify, constitute, consist of, or pertain to, in whole or in part, the subject.

14. Any undefined word or term is to be understood according to its commonly accepted meaning. Please consult with Plaintiff's counsel in the event that Defendant or its counsel has difficulty understanding the meaning of any term as it is used in these Interrogatories.

15. Singular nouns and pronouns shall be deemed to include their plurals and plural nouns and pronouns shall be deemed to include their singulars.

16. All nouns and pronouns used herein shall be deemed to be gender neutral and to include all persons regardless of sex.

17. If Defendant cannot respond to any Interrogatory in full after exercising due diligence to secure any information needed to provide an answer, please state the reason(s) for the inability to respond and the efforts undertaken to secure the information sought.

18. If Defendant objects to responding to any portion of these Interrogatories, please (a) state the legal basis and the factual basis for each such objection and (b) Fully identify with reasonable

4

particularity the subject matter of the information as to which Defendant believes the objection applies.

19.   If any response is withheld on grounds of privilege, work product, or otherwise, for each such response, set forth a privilege log and state the reason for withholding the response and the factual basis for such reason, with sufficient particularity to allow Plaintiff to assess the validity of the reason and, if necessary, for the court to rule on it.

20.   Notwithstanding the assertion of an objection on the grounds of privilege, any purportedly privileged response containing non-privileged matter must be provided, with the purportedly privileged portion expressly redacted.

21.   If Defendant contends that responding to any Interrogatory would impose an undue burden upon it, Defendant shall specify in detail how responding would impose such a burden and respond to the Interrogatory to the broadest extent possible without engaging in the activities claimed to be unduly burdensome.

22.   If Defendant contends that any Interrogatory is overly broad, Defendant shall specify with precision the way in which it contends the Interrogatory is overly broad, specify what narrower interpretation of the Interrogatory would be acceptable, and then respond to the Interrogatory on the basis of such a narrower interpretation of it.

23.   If Defendant's response to the Interrogatory would be different for different time frames within the Relevant Time Period, Defendant shall state each time frame for which the response would be different, and specify the correct response for each such time frame.

24.   These Interrogatories are to be considered as continuing in duration.   Defendant is instructed to provide-by way of supplemental responses as Defendant may hereafter obtain that will augment or otherwise modify Defendant's responses in response to these Interrogatories.

25.    "Exhibits A-F" refers to Exhibits A-F to the Complaint **except for any handwritten notations**. When the word document is used referring to faxes transmitted it excludes any handwritten notations.

26.    For any documents produced in response to any discovery, provide a summary of the bate stamped documents and identify which request they are responsive to.

## INTERROGATORIES

1.    Fully identify each person involved in answering these Interrogatories, including persons who you consulted or who provided information relied on by you in answering any Interrogatory, and state the information supplied by each such person.

    **RESPONSE:**

2.    For each person identified in Interrogatory #1, list all duties, responsibilities, and actual participation in the sending of the fax(es) at issue in this case.

    **RESPONSE:**

3.    State whether Defendant, or any other entity acting on Defendant's behalf, has utilized facsimile transmissions delivered by telephone during March 2010 to the present (the relevant time period) which either (1) were used for any advertising or promotional purpose, or (2) which advertised any property, goods, or services, and describe in detail the content of each different document sent by such transmissions and the time period each different document was sent.

    **RESPONSE:**

4.    State whether any facsimile transmissions identified in Interrogatory 3 were sent to the telephone number 314-872-9174 during the Relevant Time Period and state the dates such transmissions were sent.

    **RESPONSE:**

5.    State whether Defendant sent two or more interstate telephone facsimile transmissions in the 24 month period immediately prior to the date Defendant received service of this lawsuit, as part of any program, campaign, or other plan conducted to induce the purchase of any goods or services.

    **RESPONSE:**

6. Fully identify all persons with knowledge of the facsimile transmissions identified in Interrogatory 3 or the documents sent by such transmissions.

**RESPONSE:**

7. Fully identify each person, individually (name, title and length of employment) who was in any way involved in the facsimile transmission(s) identified in Interrogatory 3, and identify the telephone number of the telephone line used by the sending device, the address where the sending device was located at the time each call was made, the make, model, manufacturer, and serial number of the sending device, the owner of the sending device, and the owner's telephone number.

**RESPONSE:**

8. Identify all telephone numbers of any telephone lines used by the Defendant during the class period and fully identify the telephone service provider.

**RESPONSE:**

9. Identify all email address' used by any employees involved in the fax advertising and all ISPs and all Efax accounts used by Defendant.

**RESPONSE:**

10. If Defendant contends any person gave any form of invitation, consent, or permission to receive any facsimile transmissions sent by or on behalf of Defendant to telephone number 314-872-9174, then fully identify each person involved in obtaining that invitation, consent, or permission, each person who provided that invitation, consent, or permission, each person involved in maintaining a log or other record of that invitation, consent, or permission, and set forth the date(s) on which that invitation, consent, or permission was obtained.

**RESPONSE:**

11. If Defendant contends an "Established Business Relationship" ("EBR") existed between Defendant and Plaintiff (or any other person Defendant believes was associated with telephone number 314-872-9174) at the time of any facsimile transmissions sent to telephone number 314-872-9174, then fully identify each person involved in the creation of that EBR, all facts supporting the existence of such an EBR, the date(s) on which such EBR was formed, and each person involved in maintaining a log or other record of such EBR.

**RESPONSE:**

12. Other than any facsimile transmissions to phone number 314-872-9174, identify the telephone numbers to which any facsimile transmissions identified in Interrogatory 3 were sent during the Relevant Time Period and the date on which each such transmission was made.

**RESPONSE:**

13.    Fully identify each and every person who participated in Defendant's decision to send facsimile transmissions identified in Interrogatory 3, and state the extent and substance of each such person's participation therein.

**RESPONSE:**

14.    Fully identify the telephone service provider(s) that provided telephone service for the device(s) used to transmit facsimile transmissions identified in Interrogatory 3, stating the name, address, and account number of Defendant with that provider, and state the time period relevant to each such telephone service provider, the address where the sending device was located at the time each call was made, the make, model, and serial number of the sending device, the owner of the sending device, the owner's telephone number and identify all fax numbers associated with any fax machines used to send out faxes identified in Interrogatory 3.

**RESPONSE:**

15.    If Defendant operated any device used to send any facsimile transmissions identified in Interrogatory 3 during the Relevant Time Period, state 1) the number of occasions Defendant engaged in such transmissions, and 2) for each such occasion, state the number of individual facsimile transmissions sent. If Defendant does not know the actual number of individual transmissions sent for any occasion, state the number of transmissions requested and/or expected to be sent on that occasion and the source of such information.

**RESPONSE:**

16.    If Defendant operated any device used to send any facsimile transmissions identified in Interrogatory 3, during the Relevant Time Period, fully describe the equipment and/or software used, including 1) the name and version of the software used on the device, 2) location of the device when used to send such transmissions, 3) the current location of the device, 4) the identity of all users of the device, 5) and the telephone numbers of each telephone line connected to the device when used to send such transmissions.

**RESPONSE:**

17.    If any person other than Defendant operated any device used to send any facsimile transmissions identified in Interrogatory 3 during the Relevant Time Period, for each such person state 1) the number of occasions each person engaged in such transmissions, and 2) for each such occasion, state the number of individual facsimile transmissions sent by that person. If Defendant does not know the actual number of individual transmissions sent for any occasion, state the number of transmissions requested and/or expected to be sent on that occasion and the source of such information.

**RESPONSE:**

18.    Identify the name, address, and telephone number of each person, other than Plaintiff, who provided any form of invitation, consent, or permission to receive facsimile transmissions initiated by or on behalf of Defendant that utilized a facsimile transmission identified in Interrogatory 3. State for each such person, the form and substance of such invitation, consent, or permission.

**RESPONSE:**

19.    Identify the name, address, and telephone number of each person, other than Plaintiff, with whom Defendant contends an EBR existed between Defendant and such person at the time of any facsimile transmissions sent to that person, and fully identify each person involved in the creation of that EBR, all facts supporting the existence of such an EBR, the date(s) on which such EBR was formed, and each person involved in maintaining a log or other record of such EBR.

**RESPONSE:**

20.    Fully identify every person, other than Plaintiff, who has contacted Defendant to communicate a desire not to receive facsimile transmissions.

**RESPONSE:**

21.    Describe in detail how Defendant obtained or developed a list of persons and/or telephone numbers to which telephone calls have been initiated by or on behalf of Defendant that utilized a facsimile transmission identified in Interrogatory 3. Include in your response (1) whether Defendant came into possession of such list in any form, (2) if so, what happened to said list, (3) whether any portion of said list was obtained from a third party, and if so, from whom and what consideration was exchanged in order to obtain any portion of said list, and (4) whether any portion of any such list was generated by a computer using random or sequential numbers.

**RESPONSE:**

22.    If Defendant instructed any person to construct, develop, purchase, or otherwise use a list of persons and/or telephone numbers to send any facsimile transmission identified in Interrogatory 3, describe in detail all directions and/or instructions given to such third party for determining the contents of such a list, including but not limited to 1) the area codes or states to be selected, 2) the SIC codes to be selected, and 3) any other selection or filtering criteria.

**RESPONSE:**

9

23.    If any entity other than Defendant operated the equipment used to send any facsimile transmissions identified in Interrogatory 3, state the name, address, and telephone number of each such entity, identify how Defendant became aware of each such entity, and describe in detail the contents of all communications between Defendant and each such entity.

RESPONSE:

24.    If any entity other than Defendant operated the equipment used to send any facsimile transmissions to 314-872-9174 on behalf of Defendant, state the name, address, and telephone number of each such entity, identify how Defendant became aware of each such entity, and describe in detail the contents of all communications between Defendant and each such entity.

RESPONSE:

25.    If you contend that any other entity or individual should be responsible for the actions complained of in this lawsuit, fully identify each such entity or individual and state all facts supporting such contention or regarding the entity's or individual's role in the actions complained of in this lawsuit.

RESPONSE:

26.    Identify each claim, demand, objection, investigatory inquiry by any government entity, lawsuit or other form of complaint regarding facsimile advertising transmissions, including but not limited to TCPA claims, filed against you and state date filed, county and state where such complaint of suit was filed and case number.

RESPONSE:

27.    Identify all email addresses, email accounts and e-fax accounts used by Defendant or any of its employees or agents related to the fax advertising activities during the class period, March 2011 to present.

RESPONSE:

Respectfully submitted,

_____
Max G. Margulis, #24325MO
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022 – Residential
F: (636) 536-6652 – Residential
E-Mail: MaxMargulis@MargulisLaw.com
*Attorney for Plaintiff*

10

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847/368-1500
Fax:  847/368-1501
E-Mail: bwanca@andersonwanca.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the Defendant BE-THIN, INC.
by the process server with a pdf and word version on a disc.

_Max D Margulis_

STATE OF MISSOURI )
)
ST. LOUIS COUNTY )

### IN THE CIRCUIT COURT OF THE ST. LOUIS COUNTY
### STATE OF MISSOURI

RADHA GEISMANN, MD., P.C., individually
and on behalf of all others similarly-situated,

        Plaintiff,

v.

BE-THIN, INC., KEVIN EBERLY,
and JOHN DOES 1-10,

        Defendants.

Case No.:  15SL-CC00781

Division: 10

### PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
### OF DOCUMENTS DIRECTED TO DEFENDANT BE-THIN, INC.

**COMES NOW** Plaintiff and in accordance with Missouri Supreme Court Rule 58.01,
hereby requests that Defendant BE-THIN, INC. produce the following documents for inspection
and copying at the offices of the undersigned within thirty (30) days from the date of service
hereof:

### DEFINITIONS AND INSTRUCTIONS

1.    Unless stated otherwise, these Requests cover the time period running from five years
prior to the date of the original Complaint in this matter through trial in this matter.

2.    The term "Relevant Time Period" means the time period running from four years prior to
the date of the original Complaint in this matter to present.

3.    The term "fully identify" applied to any person means to state that person's full name,
including middle name and suffixes, current address, and current telephone number.  If either a

1

current address or current telephone number is not known, a request to "fully identify" any person means to state all known addresses including former addresses, and phone numbers for such person, that person's date of birth, and any other information in your possession that is of a type to assist in contacting that person and/or to differentiate that person from a list of persons with a similar name.

4.    "Defendant" or "you" means BE-THIN, INC. or any of their agents, employees, shareholders, officers, directors, or anyone Defendant has engaged or retained in any way to transmit facsimile transmissions.

5.    "Established Business Relationship" or "EBR" means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity, which relationship has not been previously terminated by either party.

6.    "Communication" means any exchange of information, whether orally or in writing, and includes, but is not limited to, telephonic communication, audiovisual communication, radio transmission, television transmission, data transmission and any and all forms of written information and documents.

7.    "Document" means anything in or upon which information may be fixed and can be perceived, reproduced or otherwise communicated, with or without the aid of any machine or device and regardless of the medium of expression in which the information is fixed (e.g., print, video, audio, computer diskette, magnetic tape), including but not limited to, the following:

2

contracts, agreements, insurance plans, insurance policies, papers, photographs, tape recordings, transcripts, computer diskettes, computer drives, hard drives, mainframes or any other kind of database or data stored in a computer in any manner (including any coding information necessary to gain access to any such computer information), videotapes, documents filed with any state or federal regulatory or administrative agency or entity, annual reports, shareholder agreements, letters, correspondence, memoranda, diaries, journals, corporate forms, faxes, telegrams, photographs, court papers, financial reports, financial statements, annual reports, checks, check books, check stubs, check statements, bank statements, deposit slips, journals, general and subsidiary ledgers, worksheets, accounts, bills, promissory notes, invoices, punch cards, purchase orders, acknowledgments, authorizations, sales slips, receipts, shipping papers, telex and other teletype communications, computer printouts, any other printout sheets, movie film, slides, microfilm, reports (including appraisal reports), studies, summaries, minutes of meetings, minute books, circulars, notes (whether typewritten, handwritten or otherwise), agendas, bulletins, notices, announcements, proofs, sheets, instructions, charts, tables, manuals, brochures, magazines, pamphlets, lists, visitors' logs, schedules, price lists, engineering and/or architectural drawings, sketches, plans, blueprints, specifications, diagrams, drafts, books and records, desk calendars, notebooks, registers, appointment books, budgets, analyses, projections, tax returns and all other data compilations from which information can be obtained or translated, regardless of whether such materials are in Defendant's possession or are in the possession of Defendant's present or former officers, agents, servants, employees, representatives, attorneys or other persons acting on their behalf.  The term "document" also includes any and all drafts and/or copies of any of the foregoing materials that do not conform to the original or final version in

3

any way, in that they contain any mark, alteration or additional writing or other change from the original or final version.

8.    "Person" refers to individuals, partnerships, associations, corporations, governmental bodies, and any and all subparts (e.g., subsidiaries, agencies, or departments) of any such entity.

9.    "Meeting" refers to any gathering of two or more persons where any face-to-face oral communication takes place or any written communication is exchanged by hand.

10.   "Contact" means any meeting, communication, signaling, or interaction of persons, by whatever means made or done, regardless of whether an exchange of information took place.

11.   "Thing" refers to all material within the broadest permissible meaning of the word.

12.   "Concerning" means relating, referring to, describing, evidencing or constituting.

13.   "Referring or relating" means to make a statement about, discuss, describe, show, reflect, concern, identify, constitute, consist of, or pertain to, in whole or in part, the subject.

14.   Any undefined word or term is to be understood according to its commonly accepted meaning.  Please consult with Plaintiff's counsel in the event that Defendant or its counsel has difficulty understanding the meaning of any term as it is used in these Requests.

15.   Singular nouns and pronouns shall be deemed to include their plurals and plural nouns and pronouns shall be deemed to include their singulars.

16.   All nouns and pronouns used herein shall be deemed to be gender neutral and to include all persons regardless of sex.

17.   Defendant is instructed to produce all requested documents that are in its possession, custody, or control, including (by way of illustration only and not limited to) documents in the possession, custody, or control of its affiliates or merged or acquired predecessors, or its present

4

or former directors, officers, partners, employees, attorneys, or other agents, as well as its present or former independent contractors over which it has control, and any other person acting on Defendant's behalf.

18.     All documents should be produced in their original folders, binders, or boxes, in the same order in which they are kept in the ordinary course of business, and shall be labeled to show their source (e.g., "from Mr. Smith's desk"). Where a document is produced that was maintained in electronic format, that document is to be produced in electronic format in its original native file format including all metadata and identifying the device(s) on which that data has been stored since its creation.

19.     If Defendant does not produce any documents requested below because they are not in Defendant's possession, custody or control, then Defendant must disclose all known information that may lead to the discovery of such documents.

20.     Documents responsive to a particular Request should be segregated, with a note Fully identifying the Request to which the group of documents is responsive.  Documents produced pursuant to one Request need not be duplicated for production pursuant to a different Request.

21.     If Defendant cannot respond to any Request in full after exercising due diligence to secure any information needed to provide an answer, please state the reason(s) for the inability to respond and the efforts undertaken to secure the information sought.

22.     If Defendant objects to responding to any portion of these Requests, please (a) state the legal basis and the factual basis for each such objection and (b) Fully identify with reasonable particularity the subject matter of the information as to which Defendant believes the objection applies.

23.   If any document is withheld on grounds of privilege, work product, or otherwise, for each such response, set forth a privilege log and state the reason for withholding the response and the factual basis for such reason, with sufficient particularity to allow Plaintiff to assess the validity of the reason and, if necessary, for the court to rule on it.

24.   Notwithstanding the assertion of an objection on the grounds of privilege, any purportedly privileged response containing non-privileged matter must be provided, with the purportedly privileged portion expressly redacted.

25.   If Defendant contends that responding to any Request would impose an undue burden upon it, Defendant shall specify in detail how responding would impose such a burden and respond to the Request to the broadest extent possible without engaging in the activities claimed to be unduly burdensome.

26.   If Defendant contends that any Request is overly broad, Defendant shall specify with precision the way in which it contends the Request is overly broad, specify what narrower interpretation of the Request would be acceptable, and then respond to the Request on the basis of such a narrower interpretation of it.

27.   If Defendant's response to the Request would be different for different time frames within the Relevant Time Period, Defendant shall state each time frame for which the response would be different, and specify the correct response for each such time frame.

28.   These Requests are to be considered as continuing in duration. Defendant is instructed to provide-by way of supplemental responses as Defendant may hereafter obtain that will augment or otherwise modify Defendant's responses in response to these Requests.

**ANY OBJECTION BASED ON PRIVILEGE THAT IS NOT ACCOMPANIED BY A PROPER PRIVILEGE LOG ENTRY IS SUBJECT TO BEING OVERRULED**

**WITHOUT CONSIDERATION OF THE MERITS OF THE OBJECTION.**

## DOCUMENTS REQUESTED

1.     Each different form of any document which promotes, advertises, announces, or solicits any property, goods, or services of Defendant which was sent by facsimile transmission during the class period (herein after March 2011 to present).

   **RESPONSE:**

2.     All documents indicating any person gave prior express permission or invitation, to receive facsimile transmissions of any document referred to in Request No. 1.

   **RESPONSE:**

3.     All documents indicating an "Established Business Relationship" ("EBR") existed between Defendant and any person to whom any facsimile transmissions of any document referred to in Request No. 1 was sent.

   **RESPONSE:**

4.     All of Defendant's insurance policies, including umbrella and excess policies, which were in effect from March 2010 to present (Relevant Time Period).

   **RESPONSE:**

5.     All correspondence to Defendant from any insurance company, broker, or agent, concerning or relating to a reservation of rights or a denial of coverage for the claims in this litigation.

   **RESPONSE:**

6.     All correspondence from Defendant to any insurance company, broker, or agent, concerning or relating to a tender of this suit, reservation of rights, or a denial of coverage for the claims in this litigation.

   **RESPONSE:**

7.     If Defendant contends Plaintiff consented in any way to receive any facsimile transmissions of any document sent by or on behalf of Defendant, then all documents that evidence such consent or which regard how such consent was sought or obtained.

   **RESPONSE:**

8.      If Defendant contends an EBR existed between Defendant and Plaintiff at the time any facsimile transmissions of any document sent by or on behalf of Defendant was transmitted to 314-872-9174, then all documents that evidence such an EBR existed at that time.

**RESPONSE:**

9.      All documents identifying any other entity that sent any facsimile transmissions of any document, by or on behalf of Defendant, to 314-872-9174 during the Relevant Time Period.

**RESPONSE:**

10.     Any contract or agreement entered into between Defendant and any third party, for the provision of fax broadcasting services to be provided by that third party during the Relevant Time Period.

**RESPONSE:**

11.     Any contract or agreement entered into between Defendant and any third party, for the provision of fax broadcasting services to be provided by any other party during the Relevant Time Period.

**RESPONSE:**

12.     All documents exchanged between Defendant and any third party, regarding the fax broadcasting services provided by that third party to Defendant during the Relevant Time Period.

**RESPONSE:**

13.     All documents exchanged between Defendant and any third party, regarding the fax broadcasting services provided by any other party to Defendant during the Relevant Time Period.

**RESPONSE:**

14.     All records, invoices, receipts or other documents showing any fees, sums of money paid, or other remuneration or compensation by Defendant to any third party, for fax broadcasting services rendered by any third party to Defendant during the Relevant Time Period.

**RESPONSE:**

15.     All records, invoices, receipts or other documents showing any fees, sums of money paid, or other remuneration or compensation by Defendant to any third party, for any lists purchased to use to send advertising faxes provided by any third party to Defendant during the Relevant Time Period.

**RESPONSE:**

16.   All documents that indicate or tend to indicate the number of the transmissions of any document identified in Request Number 1 sent or attempted to be sent via facsimile by or on behalf of Defendant to telephone numbers during the Relevant Time Period.

**RESPONSE:**

17.   All telephone records which identify individual telephone calls for the telephone lines used to send facsimile transmissions by or on behalf of Defendant to phone number 314-872-9174 during the Relevant Time Period.

**RESPONSE:**

18.   All telephone records which identify individual telephone calls for each telephone line used to transmit any document identified in Request Number 1 via facsimile by or on behalf of Defendant, to telephone subscribers during the Relevant Time Period.

**RESPONSE:**

19.   Produce the original or a forensically sound image of the hard drives and all other storage media utilized by each device used send facsimile transmissions of any document identified in Request Number 1 during the Relevant Time Period.

**RESPONSE:**

20.   Produce the original or a forensically sound image of the hard drives and all other storage media utilized by any device used to store any database of customers and/or logs of fax transmissions.

**RESPONSE:**

21.   Produce the original or a forensically sound image of the hard drives and all other storage media utilized by any device by any person who was involved in the creation, modification, review, decision making, or administration of facsimile transmissions of any document identified in Request Number 1 during the Relevant Time Period.

**RESPONSE:**

22.   All documents that contain, refer to, set forth, or explain Defendant's policy or practice of obtaining prior express permission or invitation to send any document identified in Request Number 1 via facsimile to any person.

**RESPONSE:**

23.    All documents that contain, refer to, set forth, or explain Defendant's policies or practices regarding the transmission of any document identified in Request Number 1 via facsimile.

**RESPONSE:**

24.    All documents that contain, refer to, set forth, or explain Defendant's policies or practices regarding the sending of any advertising or promotional material via facsimile.

**RESPONSE:**

25.    All documents that contain, refer to, set forth or explain Defendant's policies or practices about maintaining a log or record showing any form of permission or invitation from any person to receive any document identified in Request Number 1 via facsimile.

**RESPONSE:**

26.    All documents that contain, refer to, set forth or explain Defendant's policies or practices about maintaining a log or record showing an EBR exists between Defendant and any person, and the date and manner such EBR was formed.

**RESPONSE:**

27.    All documents that identify the recipients of any facsimile transmission of the documents attached to the Complaint as Exhibits A-F.

**RESPONSE:**

28.    All documents that identify the fax numbers which were sent or attempted to be sent any facsimile transmission of the documents attached to the Complaint as Exhibits A-F.

**RESPONSE:**

29.    Documents that Defendant reviewed or relied upon in answering the Interrogatories or Request to Admit Plaintiff directed to Defendant.

**RESPONSE:**

30.    All documents that identify persons involved in creating any facsimile transmissions sent to 314-872-9174.

**RESPONSE:**

31.    All documents that identify persons involved in creating any documents identified in Request Number 1.

**RESPONSE:**

32.    All documents that identify persons involved in the decision to use facsimile transmissions of the documents attached to the Complaint as Exhibits A-F.

**RESPONSE:**

33.    All documents that identify persons involved in the decision to use facsimile transmissions of the documents attached to the Complaint as Exhibits A-F during the Relevant Time Period.

**RESPONSE:**

34.    All invoices, bills, purchase orders, receipts, statements or other documents which set forth or identify the number, dates, charges, credits, offsets, or amounts owed to any third person for the creation or transmission by facsimile of any document identified in Request Number 1 during the Relevant Time Period.

**RESPONSE:**

35. All cancelled checks, wire transfers, money orders, or any other documents evidencing any consideration used to compensate any person who was involved in the creation or transmission by facsimile of any document identified in Request Number 1 and Interrogatory 3 during the Relevant Time Period.

**RESPONSE:**

36.    All correspondence with any person who was involved in the facsimile transmission of any document identified in Request Number 1 and Interrogatory 3 during the Relevant Time Period.

**RESPONSE:**

37.    All owner's manuals, guides, instructions, specification sheets, or other form of user's manual for the device used send facsimile transmissions of any document identified in Request Number 1 and Interrogatory 3 during the Relevant Time Period.

**RESPONSE:**

38.    All owner's manuals, guides, instructions, specification sheets, or other form of user's manual for any software used to operate any device for sending facsimile transmissions of any document identified in Request Number 1 and Interrogatory 3 during the Relevant Time Period.

**RESPONSE:**

11

39.     All documents which describe or compose any part of the list of persons and/or telephone numbers to which any document identified in Request Number 1 and Interrogatory 3 was sent or attempted to be sent via facsimile during the Relevant Time Period.

**RESPONSE:**

40.     All documents which served as a source for any part of the list of persons and/or telephone numbers to which any document identified in Request Number 1 was sent or attempted to be sent via facsimile during the Relevant Time Period.

**RESPONSE:**

41.     All documents which describe how the list of persons and/or telephone numbers identified in Request No. 39 was developed or obtained.

**RESPONSE:**

42.     All documents which set forth or describe Defendant's document destruction and retention policies which were developed in, or which were used at any time during, the Relevant Time Period.

**RESPONSE:**

43.     All documents containing communications with any person or entity, other than your attorney, regarding any complaint or objection regarding advertisements sent by facsimile.

**RESPONSE:**

44.     All lawsuits, letters of inquiry, notices, or other forms of complaints filed against Defendant or received by Defendant attempting to allege a violation of the Telephone Consumer Protection Act.

**RESPONSE:**

45.     The computer(s) and software utilized to send facsimile transmissions of any document identified in Request Number 1 during the Relevant Time Period.

**RESPONSE:**

44.     All documents Defendant plans to introduce into evidence at trial.

**RESPONSE:**

45.     All documents Defendant plans to use for demonstrative purposes at trial.

**RESPONSE:**

46.   All documents Defendant plans to use for impeachment purposes at trial.

**RESPONSE:**

47.   All documents Defendant plans to use for rebuttal purposes at trial.

**RESPONSE:**

48.   All documents provided to any expert retained for the purposes of this litigation.

**RESPONSE:**

49.   A copy of all customer lists used during any portion of the Relevant Time Period.

**RESPONSE:**

50.   A list of all business locations operated by Defendant including the manager of each said location, the address, all phone numbers and fax numbers of each location, which were open at any time during the Relevant Time Period.

**RESPONSE:**

51.   A copy of phone bill(s) showing assignment of any fax number used to send out fax transmissions the same or similar to Exhibits A-F from the petition during the Class Period.

**RESPONSE:**

52.   All documents containing any database or list of fax numbers to which fax transmissions or Exhibits A-f or any fax transmission advertising the goods, products or services, of Defendant were sent from March 2011 to the present.

**RESPONSE:**

Respectfully submitted,

_Max D Margulis_

Max G. Margulis, #24325MO
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022 – Residential
F: (636) 536-6652 – Residential
E-Mail: MaxMargulis@MargulisLaw.com
*Attorney for Plaintiff*

13

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500
Fax: 847/368-1501
E-Mail: bwanca@andersonwanca.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the Defendant BE-THIN, INC. by the process server with a pdf and word version on a disc.

_Thos. D Margulis_

STATE OF MISSOURI           )
                            )
ST. LOUIS COUNTY            )

## IN THE CIRCUIT COURT OF THE ST. LOUIS COUNTY
## STATE OF MISSOURI

RADHA GEISMANN, MD., P.C., individually
and on behalf of all others similarly-situated,

       Plaintiff,

v.

BE-THIN, INC., KEVIN EBERLY,
and JOHN DOES 1-10,

       Defendants.

Case No.:  15SL-CC00781

Division:  10

## FAILURE TO TIMELY RESPOND TO REQUESTS FOR ADMISSIONS IN COMPLIANCE WITH RULE 59.01 SHALL RESULT IN EACH MATTER BEING ADMITTED BY YOU AND NOT SUBJECT TO FURTHER DISPUTE.

## PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS DIRECTED TO DEFENDANT BE-THIN, INC.

       **COMES NOW** Plaintiff and in accordance with Missouri Supreme Court Rule 59.01, hereby requests that Defendant BE-THIN, INC. answer, fully and separately, under oath, the following request for admissions within thirty (30) days from the date of service of this discovery.   If these admissions have been issued prematurely they should be deemed as served on the first permissible date of service.

       "Exhibits A-F" refers to Exhibits A-F of the Complaint except **for any handwritten notations.**   When the word document is used referring to faxes transmitted it excludes any handwritten notations.

### STATEMENTS OF FACT TO BE ADMITTED OR DENIED

       1.    Admit that the documents attached to the petition as Exhibits A-F are true and correct copy (except for any handwritten notations) of a facsimile transmission sent by or on behalf of Defendant.

**RESPONSE:**

2.     Admit that the document attached to the petition as Exhibits A-F were sent to the telephone number 314-872-9174 on or about September 20, 2012, October 11, 2012, November 8, 2012, November 30, 2012, November 14, 2013 and December 12, 2013.

**RESPONSE:**

3.     Admit that the documents attached to the petition as Exhibits A-F were sent on or about September 20, 2012, October 11, 2012, November 8, 2012, November 30, 2012, November 14, 2013 and December 12, 2013.

**RESPONSE:**

4.     Admit that the documents attached to the petition as Exhibits A-F (except any hand written notations) were received at the telephone number 314-872-9174 on or about September 20, 2012, October 11, 2012, November 8, 2012, November 30, 2012, November 14, 2013 and December 12, 2013.

**RESPONSE:**

5.     Admit that the documents attached to the petition as Exhibits A-F were received at the telephone number 314-872-9174 on equipment which has the capacity to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

**RESPONSE:**

6.     Admit the documents attached to the petition as Exhibits A-F were sent by or on behalf of Defendant to the telephone number 314-872-9174.

**RESPONSE:**

7.     Admit that Exhibits A-F describe the commercial availability of any property, goods, or services.

**RESPONSE:**

8.     Admit that Defendant created the contents of the documents that were sent by fax transmission resulting in Exhibits A-F.

**RESPONSE:**

9.     Admit that Defendant had the ability to control the contents of the documents that were sent by fax transmission resulting in Exhibits A-F.

**RESPONSE:**

10.   Admit that Defendant had the right to control the contents of the documents that were sent by fax transmission resulting in Exhibits A-F

**RESPONSE:**

11.   Admit that Exhibits A-F describes the quality of any property, goods, or services.

**RESPONSE:**

12.   Admit that during the Class Period (herein after March 2011 to Present) you or someone on your behalf has sent Exhibits A-F to more than 40 persons.

**RESPONSE:**

13.   Admit that during the Class Period, you or someone on your behalf has sent Exhibits A-F to more than 500 persons.

**RESPONSE:**

14.   Admit that during the Class Period, you or someone on your behalf has sent Exhibits A-F to more than 3000 persons.

**RESPONSE:**

15.   Admit that during the Class Period, you or someone on your behalf has sent Exhibits A-F to more than 4000 persons.

**RESPONSE:**

16.   Admit that during the Class Period, you or someone on your behalf has sent Exhibits A-F to more than 10,000 persons.

**RESPONSE:**

17.   Admit that during the Class Period, you or someone on your behalf has sent Exhibits A-F to more than 40 telephone numbers.

**RESPONSE:**

18.   Admit that during the Class Period, you or someone on your behalf has sent Exhibits A-F to more than 500 telephone numbers.

**RESPONSE:**

3

19.     Admit that during the Class Period, you or someone on your behalf has sent Exhibits A-F to more than 3,000 telephone numbers.

**RESPONSE:**

20.     Admit that during the Class Period, you or someone on your behalf has sent Exhibits A-F to more than 4,000 telephone numbers.

**RESPONSE:**

21.     Admit that during the Class Period, you or someone on your behalf has sent Exhibits A-F to more than 10,000 telephone numbers.

**RESPONSE:**

22.     Admit that during the Class Period you or someone on your behalf has sent advertisements by fax to more than 40 telephone numbers.

**RESPONSE:**

23.     Admit that during the Class Period you or someone on your behalf has sent advertisements by fax to more than 500 telephone numbers.

**RESPONSE:**

24.     Admit that during the Class Period you or someone on your behalf has sent advertisements by fax to more than 3,000 telephone numbers.

**RESPONSE:**

25.     Admit that during the Class Period you or someone on your behalf has sent advertisements by fax to more than 4,000 telephone numbers.

**RESPONSE:**

26.     Admit that during the Class Period you or someone on your behalf has sent advertisements by fax to more than 10,000 telephone numbers.

**RESPONSE:**

27.     Admit that during the Class Period you or someone on your behalf has sent advertisements by fax to more than 40 persons.

**RESPONSE:**

4

28.    Admit that during the Class Period, you or someone on your behalf has sent advertisements by fax to more than 500 persons.

**RESPONSE:**

29.    Admit that during the Class Period, you or someone on your behalf has sent advertisements by fax to more than 3000 persons.

**RESPONSE:**

30.    Admit that during the Class Period, you or someone on your behalf has sent advertisements by fax to more than 4000 persons.

**RESPONSE:**

31.    Admit that during the Class Period, you or someone on your behalf has sent advertisements by fax to more than 10,000 persons.

**RESPONSE:**

32.    Admit that all times during the class period, the telephone number 314-872-9174 was registered with the phone company to Plaintiff.

**RESPONSE:**

33.    Admit that all times during the class period, the telephone number 314-872-9174 was registered with the phone company as a business telephone line in the name of "RADHA GEISMANN, MD., P.C.".

**RESPONSE:**

34.    Admit that you did not obtain prior express invitation or permissions to send any facsimile transmissions to the telephone number 314-872-9174.

**RESPONSE:**

35.    Admit that you did not obtain any form of consent, invitation, or permissions to send any facsimile transmissions to the telephone number 314-872-9174.

**RESPONSE:**

36.    Admit that neither you nor any person acting on your behalf had an established business relationship with Plaintiff or any other person associated with telephone number 314-872-9174 at the time Exhibits A-F were sent to that telephone number.

**RESPONSE:**  ·

5

37.     Admit that you or someone on your behalf maintains a record of persons who provided any form of consent, invitation, or permissions to receive advertisements by facsimile machine and the dates such consent, invitation, or permissions.

**RESPONSE:**

38.     Admit that you have records or other documents by which you can identify persons or entities that had an established business relationship with you during the last five years.

**RESPONSE:**

39.     Admit that you have no factual basis to allege that you or any person acting on your behalf had prior express invitation or permission to send facsimiles containing material advertising the commercial availability or quality of your property, goods or services to telephone number 314-872-9174.

**RESPONSE:**

40.     Admit that you have no factual basis to allege that you or any person acting on your behalf had any form of consent or permission to send facsimiles containing material advertising the commercial availability or quality of your property, goods or services to telephone number 314-872-9174.

**RESPONSE:**

41.     Admit that you have no factual basis to allege that you or any person acting on your behalf had prior express invitation or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

**RESPONSE:**

42.     Admit that you have no factual basis to allege that you or any person acting on your behalf had any form of invitation or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

**RESPONSE:**

43.     Admit that neither you nor any person acting on your behalf engaged in any activities designed to obtain prior express invitation or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

**RESPONSE:**

6

44. Admit that neither you nor any person acting on your behalf engaged in any activities designed to obtain any form of consent or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

RESPONSE:

45. Admit that neither you nor any person acting on your behalf engaged in any activities that actually obtained prior express invitation or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

RESPONSE:

46. Admit that neither you nor any person acting on your behalf engaged in any activities that actually obtained any form of consent or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

RESPONSE:

47. Admit that Defendant's made an affirmative decision to send facsimile transmissions of Exhibits A-F to telephone numbers.

RESPONSE:

48. Admit that prior to the date Defendant received notice of this lawsuit, Defendant did not give any consideration to the legal restrictions on the use of facsimile transmissions containing material advertising the commercial availability or quality of any property, goods, or services.

RESPONSE:

49. Admit that Defendant operated the device used to send facsimile transmissions to telephone number 314-872-9174.

RESPONSE:

50. Admit that a person other than Defendant operated the device used to send facsimile transmissions to telephone number 314-872-9174.

RESPONSE:

51. Admit that the person that operated the device that sent facsimile transmissions of Exhibits A-F to telephone number 314-872-9174 did so on behalf of Defendant.

7

**RESPONSE:**

52.    Admit that during the Class Period, Defendant operated a device used to send facsimile transmissions that contained material advertising the commercial availability or quality of any property, goods, or services.

**RESPONSE:**

53.    Admit that during the Class Period, a person acting on behalf of Defendant operated a device used to send facsimile transmissions that contained material advertising the commercial availability or quality of any property, goods, or services.

**RESPONSE:**

54.    Admit that no person other than Plaintiff has contacted Defendant to communicate a desire not to receive facsimile transmissions.

**RESPONSE:**

55.    Admit that Defendant has no policies or procedures which were used or in effect at any time during the Class Period, that set forth any policies, procedures, rules, or other guidelines for the use of facsimile transmissions.

**RESPONSE:**

56.    Admit that Defendant obtained or developed a list of persons and/or telephone numbers to which telephone calls have been initiated by or on behalf of Defendant that utilized facsimile transmissions of Exhibits A-F.

**RESPONSE:**

57.    Admit that Defendant obtained or developed a list of persons and/or telephone numbers to which telephone calls have been initiated by or on behalf of Defendant that sent facsimile transmissions of material advertising the commercial availability or quality of any property, goods, or services.

**RESPONSE:**

58.    Admit that Defendant instructed another person to construct, develop, purchase, or otherwise use a list of persons and/or telephone numbers to send facsimile transmissions that contained material advertising the commercial availability or quality of any property, goods, or services.

**RESPONSE:**

8

59.    Admit that Defendant instructed another person to construct, develop, purchase, or otherwise use a list of persons and/or telephone numbers to send facsimile transmissions of Exhibits A-F.

**RESPONSE:**

60.    Admit that Defendant had document retention policies and procedures which were in effect during any portion of the Class Period.

**RESPONSE:**

61.    Admit that Defendant did not consult with its attorney, at any time prior to service of this lawsuit, for the purposes of determining the legal restrictions on the use of facsimile transmissions for advertising.

**RESPONSE:**

62.    Admit that Defendant did not consult any person, organization, document, or other source of information, other than its attorney, at any time prior to service of this lawsuit, for the purposes of determining the legal restrictions on the use of facsimile transmissions for advertising.

**RESPONSE:**

63.    Admit BE-THIN, INC. is your true and correct legal name.

**RESPONSE:**

64.    Admit that Defendant has been sued in its proper legal name and capacity.

**RESPONSE:**

65.    You or someone on your behalf have sent Exhibits A-F or other faxes describing the commercial availability or quality of any goods or services to more than 40 persons nationwide from March 2011 to the present.

- **RESPONSE:**

· 66.    You or someone on your behalf have sent Exhibits A-F or other faxes describing the commercial availability or quality of any goods or services to more than 40 telephone numbers.

**RESPONSE:**

9

67.    You or someone on your behalf have sent Exhibits A-F or other faxes describing the commercial availability or quality of any goods or services to more than 1,000 telephone numbers.

**RESPONSE:**

68.    You or someone on your behalf have sent Exhibits A-F or other faxes describing the commercial availability or quality of any goods or services to more than 5,000 telephone numbers.

**RESPONSE:**

69.    You or someone on your behalf have sent Exhibits A-F or other faxes describing the commercial availability or quality of any goods or services to more than 10,000 telephone numbers.

**RESPONSE:**

Respectfully submitted,

*Max D Margulis*

Max G. Margulis, #24325
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022 – Residential
F: (636) 536-6652 – Residential
E-Mail: MaxMargulis@MargulisLaw.com
*Attorney for Plaintiff*

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500
Fax: 847/368-1501
E-Mail: bwanca@andersonwanca.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the Defendant BE-THIN, INC. by the process server with a pdf and word version on a disc.

*Max D Margulis*

10